**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

ALOIMER URDANIVIA,

      Plaintiff,                                CASE NO.:

      v.                                   JURY TRIAL DEMANDED

UNIVERSITY OF MIAMI d/b/a
UHEALTH,

      Defendant.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ALOIMER URDANIVIA (hereinafter referred to as "Plaintiff" or "Mr. Urdanivia"), by and through his undersigned counsel, hereby files this lawsuit against Defendant, UNIVERSITY OF MIAMI d/b/a UHEALTH (hereinafter referred to as "Defendant" or "UM"), and alleges as follows:

### INTRODUCTION

1. This action arises from Defendant's refusal to hire Plaintiff for senior supply-chain roles following the disclosure of his military/veteran status. Defendant interpreted Plaintiff's veteran status as a negative factor for the purposes of hiring considerations, and further denied Plaintiff employment after Defendant's agents made repeated representations that Plaintiff was the leading candidate and that an offer was forthcoming.

2. Plaintiff brings a claim under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311.

3.      Plaintiff also asserts Florida state-law claims for breach of contract, promissory estoppel, and negligent misrepresentation based on Defendant's promises and representations during the hiring process.

### PARTIES

4.      Plaintiff Aloimer Urdanivia is a U.S. Army veteran with more than twenty years of service in medical logistics, contracting, and healthcare supply operations. Plaintiff honorably retired from the U.S. Army effective June 29, 2025.

5.      Plaintiff is a person protected under USERRA because he is a former member of the uniformed services and performed military service as defined by USERRA. 38 U.S.C. §§ 4303(13), 4311.

6.      Defendant University of Miami is a Florida not-for-profit corporation doing business as UHealth, with substantial operations in Miami-Dade County, Florida. Defendant was, at all relevant times, an "employer" within the meaning of USERRA, 38 U.S.C. § 4303(4).

### JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under USERRA, 38 U.S.C. §§ 4311 and 4323.

8.      This Court has supplemental jurisdiction over Plaintiff's Florida law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy as the USERRA claim.

9.      Venue is proper in the Miami Division under 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events and omissions giving rise to the claims occurred in Miami-Dade County, Florida.

**FACTUAL ALLEGATIONS**

10.     Plaintiff is a retired member of the United States Army who served for over twenty (20) years and was awarded the Meritorious Service Medal.

11.     Plaintiff applied to Defendant for a senior contracting role commonly described as Senior Contract Manager (the "Contract Manager Role").

12.     Defendant selected Plaintiff for interviews, including a panel interview and a final interview process.

13.     On or about February 20, 2025, Plaintiff participated in a final-round interview for the Contract Manager Role with senior University stakeholders, including Humberto Speziani (upon information and belief, a senior supply chain leader involved in or influencing the hiring decision).

14.     Immediately following the final interview, Plaintiff received communications from Defendant's contracting leadership reflecting that Defendant viewed Plaintiff as an exceptionally strong candidate and that the process was moving into an offer/HR finalization.

15.     Specifically, on or about February 21, 2025 (the day after Plaintiff's final interview), Defendant's Director of Contracting & Sourcing, Maita Beguiristain, told Plaintiff that he had received the highest evaluation among candidates and that Plaintiff should expect a formal offer letter and next steps from Human Resources.

16.     Plaintiff reasonably understood these representations to mean that Defendant had made (or was in the final stage of making) a decision to hire him for the Contract Manager Role, subject only to routine HR processing.

17.     In the weeks that followed, Plaintiff continued to follow up in writing for status updates and next steps. Defendant did not provide an offer letter.

18.     Months later, Plaintiff received notice that he was not selected for the Contract Manager Role. Plaintiff disputed that outcome in writing and asked Defendant to clarify, because Plaintiff had been led to believe that he had been selected and that the process was merely delayed due to internal administrative issues (including references to a hiring freeze).

19.     Plaintiff also pursued Defendant's materials management leadership role at UHealth SoLé Mia (the "SoLé Mia Role").

20.     Defendant selected Plaintiff for interviews for the SoLé Mia Role over multiple stages and months.

21.     During the late stages of the SoLé Mia Role process, Plaintiff interviewed with Defendant's supply-chain leadership, including Nate Yuen (upon information and belief, then a senior supply chain executive), as part of the final decision process.

22.     During that interview, Defendant told Plaintiff, in substance, that Defendant intended to bring him on, but that there were salary/pay-grade mechanics to address through HR because Plaintiff's experience level and salary expectations were above the then-posted pay grade. Plaintiff was told HR would address and finalize the compensation classification.

23.     Plaintiff maintained regular communications with Defendant's materials management leadership, including Malcolm Demps, regarding timing, leadership alignment, and HR processing.

24.     Defendant also stated that Defendant was dealing with internal timing/approval constraints (including references to a hiring freeze) that affected issuance of offer paperwork.

25.     On or about June 20, 2025, Plaintiff contacted Malcolm Demps to request an update on the SoLé Mia role and/or other pending roles after extended delays and lack of an offer letter.

26. In response, Mr. Demps told Plaintiff, in substance, that Defendant's prior leadership had approved or supported Plaintiff's hire, but that new leadership (specifically, Humberto Speziani) decided not to proceed because Plaintiff's military/veteran background was viewed as an "improper connection" to prior leadership, i.e., "veteran ties;" specifically, with Mr. Yuen.

27. Plaintiff had no personal relationship with Mr. Yuen beyond the professional hiring process and interview(s). Plaintiff's military service warrants protection under USERRA and cannot lawfully be treated as a negative factor for hiring.

28. Plaintiff asked Defendant to reconsider and/or to be given a fair opportunity to clarify the alleged "connection" and to be evaluated based on qualifications. Defendant did not provide such an opportunity and did not respond substantively.

29. Defendant subsequently withheld an offer of employment to Plaintiff for the SoLé Mia Role and did not provide a legitimate, non-discriminatory explanation consistent with Defendant's earlier representations about Plaintiff's standing as a top candidate.

30. Defendant's agents made repeated representations that Plaintiff was a top candidate, that an offer was forthcoming, and that only routine HR processing and/or pay-grade formalities remained.

31. Plaintiff reasonably relied on Defendant's representations in making significant personal and professional decisions, including decisions concerning timing and strategy of his transition to civilian life, pursuit of alternative opportunities, and expenditures and planning associated with anticipated employment with Defendant.

32. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits he would have earned had Defendant hired him as represented, as well as other consequential economic losses.

## CAUSES OF ACTION

### COUNT I
**38 U.S.C. § 4311(a) and § 4323**
*USERRA – Discriminatory Denial of Employment*

33. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 32.

34. USERRA provides that an employer may not deny initial employment to a person on the basis of that person's membership in the uniformed services or military service. 38 U.S.C. § 4311(a).

35. Plaintiff was a highly qualified candidate for the positions at issue and successfully advanced through multiple interview rounds, including a panel interview and a final-round interview with senior leadership.

36. Following Plaintiff's final interview, Defendant's Director of Contracting and Sourcing informed Plaintiff that he had received the highest evaluation among candidates and that a formal offer letter and next steps from Human Resources were forthcoming.

37. Defendant's representatives also advised Plaintiff that the only remaining issues before finalizing his hire involved routine Human Resources processing and compensation classification.

38. Despite these representations, Defendant later reversed course and refused to hire Plaintiff after new leadership became involved in the hiring decision.

39. When Plaintiff sought clarification regarding the sudden change in the hiring decision, Defendant's materials management leadership informed Plaintiff that the decision not to

proceed with his hire was based on Plaintiff's "veteran ties," referring to Plaintiff's military background and perceived connection to prior leadership.

40.     Defendant's reference to Plaintiff's "veteran ties" demonstrates that Plaintiff's military service was treated as a negative factor in the hiring decision.

41.     Defendant's abrupt reversal of the hiring decision after previously representing that an offer was forthcoming further supports the inference that Plaintiff's military service was a motivating factor in Defendant's decision not to hire him.

42.     Under USERRA, Plaintiff's military service need only be a motivating factor in the adverse employment decision, even if other factors were also considered.

43.     Plaintiff's military service and veteran status were a substantial or motivating factor in Defendant's decision to deny Plaintiff initial employment and to refuse to proceed with the hiring process for the roles described above.

44.     Defendant's decisionmakers expressly treated Plaintiff's military background as a negative factor by labeling it as "veteran ties" or an improper "connection," disqualifying Plaintiff from hire, and/or by acting on stereotypes or animus related to Plaintiff's protected military status.

45.     Defendant cannot meet its burden to prove, by a preponderance of the evidence, that it would have made the same decision absent Plaintiff's protected military status.

46.     Defendant's violation was willful, entitling Plaintiff to liquidated damages under 38 U.S.C. § 4323(d).

**COUNT II**
*Breach of Contract*

47.     Plaintiff reincorporates the factual allegations in Paragraphs 1 through 32.

48.     Defendant, through its authorized agents, made an offer of employment to Plaintiff for one or more of the roles described above, with essential terms sufficiently definite to form a contract.

49.     Defendant communicated to Plaintiff that the hiring decision had effectively been made and that only routine administrative steps, including Human Resources processing and compensation classification, remained before finalizing his employment.

50.     Plaintiff accepted Defendant's offer by communicating acceptance, continuing through the prescribed hiring steps, and making himself available for onboarding and start-date coordination.

51.     These communications constituted an offer of employment to Plaintiff for the position described above, with essential terms sufficiently definite to form a binding agreement, including the position to be held, the nature of the work to be performed, and that compensation would be provided consistent with Defendant's salary structure for the role.

52.     Plaintiff was ready, willing, and able to perform the duties of the position and to commence employment upon Defendant's completion of the remaining onboarding formalities.

53.     Defendant breached the agreement by failing and refusing to consummate the hire, rescinding or withholding the promised employment, and failing to provide the offer letter and employment start that Defendant represented were forthcoming.

54.     Plaintiff suffered damages as a direct and proximate result of Defendant's breach, including lost compensation and benefits and foreseeable consequential losses.

## COUNT III
### *Promissory Estoppel / Detrimental Reliance*

55.     Plaintiff reincorporates the factual allegations in Paragraphs 1 through 32.

56. During the hiring process, Defendant's agents repeatedly represented to Plaintiff that he was the leading candidate for the positions at issue and that Defendant intended to hire him.

57. Defendant's representatives informed Plaintiff that he had received the highest evaluation among candidates and that a formal offer letter and next steps from Human Resources would be forthcoming.

58. Defendant also communicated to Plaintiff that the only remaining issues before finalizing his hire involved routine administrative matters, including Human Resources processing and compensation classification.

59. These statements and representations constituted clear and definite promises that Plaintiff would be hired once Defendant completed its internal administrative steps.

60. Defendant knew or reasonably should have known that Plaintiff would rely on these promises in making decisions regarding his civilian employment following his military retirement.

61. In reliance on Defendant's promises, Plaintiff structured his civilian employment transition and career planning around the anticipated position with Defendant and continued to pursue the opportunity in accordance with Defendant's instructions.

62. Plaintiff's reliance on Defendant's promises was reasonable under the circumstances because Defendant's agents repeatedly represented that the hiring decision had effectively been made and that only routine formalities remained.

63. Defendant subsequently refused to hire Plaintiff after making the promises described above.

64. As a result of his reliance on Defendant's promises, Plaintiff suffered economic harm including lost wages, lost employment opportunities, and other financial losses.

65. Injustice can be avoided only by enforcing Defendant's promises or awarding reliance damages.

### COUNT IV
### *Negligent Misrepresentation*

66. Plaintiff reincorporates the factual allegations in Paragraphs 1 through 32.

67. During the hiring process, Defendant's representatives, including Defendant's Director of Contracting and Sourcing, Maita Beguiristain, represented to Plaintiff that he had received the highest evaluation among candidates and that a formal offer letter and next steps from Human Resources would follow.

68. Defendant's materials management leadership similarly represented that Plaintiff would be hired for the SoLé Mia role subject only to routine Human Resources processing and compensation classification.

69. These representations were statements of material fact made in the course of Defendant's business operations and in the context of recruiting Plaintiff for employment.

70. At the time these representations were made, Defendant's agents failed to exercise reasonable care in determining whether Defendant would, in fact, proceed with hiring Plaintiff and whether the hiring decision was finalized.

71. Defendant's agents intended or reasonably expected that Plaintiff would rely on these representations in planning his transition to civilian employment and in continuing to pursue the position with Defendant.

72. Plaintiff reasonably and justifiably relied on these representations by continuing through the hiring process, maintaining his availability for employment with Defendant, and structuring his employment transition based on the expectation that he would be hired.

73. Defendant later refused to hire Plaintiff despite the representations described above

10

74.     As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff suffered damages including lost wages, lost employment opportunities, and other economic harm.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court enter judgment in favor of Plaintiff and against Defendant and award: (a) back pay and lost benefits; (b) front pay and/or instatement; (c) liquidated damages under 38 U.S.C. § 4323; (d) compensatory economic damages on the Florida law claims to the extent not duplicative; (e) reasonable attorneys' fees, costs, and disbursements; (f) pre- and post-judgment interest; (g) injunctive and other equitable relief; and (h) such other relief as the Court deems just and proper.

Dated:  March 10, 2026                              **DEREK SMITH LAW GROUP, PLLC**
                                                      *Counsel for Plaintiff*

                                                      */s/ Nicolas A. Yoda*
                                                      Nicolas A. Yoda, Esq.
                                                      Florida Bar No.: 1015597
                                                      Derek Smith Law Group, PLLC
                                                      520 Brickell Key Drive, Suite O-301
                                                      Miami, FL 33131
                                                      Tel: (305) 946-1884
                                                      Fax: (305) 503-6741
                                                      Nicolasy@dereksmithlaw.com